FILED

2005 May-19  PM 01:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**



| | |
|---|---|
| **SYLVIA VAUGHN, as Administratrix,**<br>**of the estate of ANTHONY RYAN   McLEMORE** | ]<br>]<br>] |
| **PLAINTIFF,** | ]<br>] |
| **v.** | ] **Case No.  CV-03-**<br>] **VEH-3052-S** |
| | ] |
| **THE CITY OF ATHENS, et. al.,** | ]<br>] |
| **DEFENDANTS.** | ] |

## OPINION

This Court has before it the Motions to Dismiss  (Doc. 11) as to Defendants

Tracy Harrison and Trevor Harris.

### I.  Procedural History

Plaintiff Sylvia Vaughn, as the Administratrix for the estate of Anthony

Ryan McLemore,  the deceased, commenced this action on November 13, 2003,

by filing a complaint in this Court alleging violations of 42 U.S.C. § 1983 (Count

I); ALA. CODE  § 14-6-105 (1975) (Count II); ALA. CODE  § 6-5-410 (1975)

(Count III); and asserting that while acting as an agent of the other co-defendants,

1

John Brown assaulted and battered Anthony Ryan McLemore (Count IV). The Plaintiff filed a complaint against the Defendants, City of Athens, Alabama, Chief of Police Wayne Harper, Officer Tracy Harrison, Officer Trevor Harris, and John Brown. On December 3, 2003, the Defendants contemporaneously filed separate motions to dismiss.[1]  Defendants Harrison and Harris filed motions to dismiss on the following grounds: (1) failure to state a claim upon which relief may be granted, (2) Plaintiff's official capacity claims against Defendants are redundant and superfluous, (3) Defendants have qualified immunity from the Plaintiff's claims in this action under 42 U.S.C. § 1983, (4) Defendants have both statutory discretionary function immunity under ALA. CODE § 6-5-338(a) (1975) and common law discretionary function immunity under § 875D of the Restatement 2d of Torts from the Plaintiff's state law claims, (5) Plaintiff's claims premised on an alleged violation of ALA. CODE §14-6-105 (1975) did not survive the death of Plaintiff's decedent and are merged into the Plaintiff's wrongful death claim under ALA. CODE §6-5-410 (1975), and (6) Plaintiff has no maintainable claim under ALA. CODE  § 14-6-105 (1975).

## II.  Standard of Review

---

[1] The motions to dismiss filed by the other three  remaining Defendants (City of Athens, Alabama, Wayne Harper, and John Brown) are the subject of separate pending motions to dismiss filed contemporaneously with the motions to dismiss regarding Defendants Harrison and Harris.

## A.  Motion To Dismiss

"When considering a motion to dismiss for failure to state a claim, a court must accept the allegations in the complaint as true, construing them in the light most favorable to the plaintiff." Murphy v. FDIC, 208 F.3d 959, 962 (11th Cir. 2003) (quoting Kirby v. Siegelman, 195 F. 3d 1285, 1289 (11th Cir.  1999)). Unless it appears beyond doubt that the Plaintiffs could prove no set of facts entitling them to relief, neither the complaint nor any count therein may be dismissed.  Conley v. Gibson, 335 U.S. 41, 45-36 (1957); Harris v. Proctor & Gamble Cellulose, 73 F. 3d 321, 324 (11th Cir. 1996).

## III.  Allegations of Complaint[2]

The complaint alleges that "on August 18, 2002, Officer Trevor Harris arrested Anthony McLemore, and placed him in the Athens City Jail on the charges of Unlawful Possession of Controlled Substances, a felony." (Complaint, ¶ 11.)  According to the complaint, "under Alabama law, a person cannot have a signature bond for a felony, and he must go through the county jail." (Complaint, ¶ 12.)  The complaint alleges that "Anthony McLemore was already on probation at the time of his arrest."  (Complaint, ¶ 13.)   Plaintiff alleges that "the arrest

---

[2] The Court understands that the allegations set forth in the Complaint are strictly those of the Plaintiff. Given the standard of review, the Court must accept such allegations as true for the purpose of granting or denying a motion to dismiss.

violated the terms of Anthony McLemore's probation." (Complaint, ¶ 14.) Plaintiff also alleges that "Anthony McLemore's parole officer, Bruce Graham, was notified of Anthony McLemore's arrest." (Complaint, ¶ 15.) The complaint alleges that, "Bruce Graham placed a hold on McLemore, meaning he should not be released from the jail because of the terms of his parole." (Complaint, ¶ 16.) The complaint also alleges that, "the Defendants, Trevor Harris and Tracy Harrison of the Athens Police Department, worked out an agreement with Anthony McLemore where he agreed to cooperate by setting up a drug dealer, John David Brown." (Complaint, ¶ 17.) According to the complaint, "Anthony McLemore agreed to cooperate in exchange for leniency or not being charged." (Complaint, ¶ 18.) The Plaintiff alleges that, "Anthony McLemore has helped the Athens Police Department in the past on some drug cases in exchange for consideration." (Complaint, ¶ 19.) According to the complaint, "Anthony McLemore was released from the jail on his own recognizance; he did not have to post any bond." (Complaint, ¶ 20.) The complaint alleges that, "Harris and Harrison approved of McLemore's release." (Complaint, ¶ 21.) According to the complaint, "Bruce Graham never gave the Athens Police Department permission to release Anthony McLemore." (Complaint, ¶ 22.) Plaintiff alleges that, "Harris and Harrison sent Anthony McLemore to set up a buy from John Brown."

4

(Complaint, ¶ 23.)  According to the complaint, "Standard  protocol is to search the informant and then wire him.  The informant is followed within a few blocks of the deal and the transaction is listened to in case something goes bad." (Complaint, ¶ 24.)

Plaintiff contends in her complaint that before McLemore was sent to "set up" the buy from Brown, the officers were warned that Brown would attempt to kill McLemore "for trying to set him up for criminal prosecution."  (Complaint, ¶ 25.)  The complaint alleges that the officers "ignored the warnings and sent Anthony anyway."  (Complaint, ¶ 26.)   The complaint alleges that no "arrangements were made to protect Anthony." (Complaint, ¶ 27.)  Plaintiff alleges that McLemore was killed by Brown "on August 20, 2002, for trying to set him up."  (Complaint, ¶ 28.)

According to the complaint, "Anthony McLemore would be alive today if the defendants had heeded the warnings and never released him."  (Complaint, ¶ 29.)  Plaintiff further alleges that McLemore "would also be alive today if the defendants had followed proper protocol."  (Complaint, ¶ 30.)

## IV.  Applicable Substantive Law and Analysis

### A.  Defendants Harrison and Harris Official Capacity Claims

The Plaintiff sues the Defendants Harrison and Harris in their official

5

capacity.  As to the Plaintiff's claims against Defendants Harrison and Harris in their official capacity, the Plaintiff concedes that these claims must be dismissed because the City of Athens, Alabama is a separately named defendant in this action.  Therefore, the Plaintiff's official capacity claims against Defendants Harrison and Harris are redundant and should be dismissed.  "Official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.. . . [A]n official-capacity suit is, in all respects other than name, to be treated as the suit against the entity." Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (internal quotation marks omitted).  Accordingly, Defendants Harrison's and Harris's motions to dismiss as to Plaintiff's claims against Defendants Harrison and Harris in their official capacity are due to be **GRANTED**.  The Plaintiff's claims against Defendant Harrison and Harris in their official capacity are **DISMISSED.**

## B.  Deprivation of The Constitutional Rights of Decedent

Plaintiff alleges in her complaint that Defendants Harrison and Harris deprived Anthony McLemore of his due process rights because the state officials owed a duty to protect McLemore for four independent reasons: he was in their custody; they created the dangerous situation; McLemore had a right to bodily integrity; and the defendants owed a duty under Alabama law.  The Plaintiff

further alleges in her complaint that the Defendants breach their duty to McLemore by showing deliberate indifference to a substantial risk of serious harm to McLemore. The Plaintiff alleges that this breach of duty is shocking to the conscience because the officers had time and ability to prevent the harm but chose to do nothing including choosing not to tell McLemore that his life was in danger.

It is well settled that the state does not generally have a duty to protect a private individual from the violence of another. "Generally a person does not have a constitutional right under the Fourteenth Amendment to be protected from the criminal acts of third parties." See Mitchell v. Duvall County School Board, 107 F.3d 837, 838 (11th Cir. 1997). The Eleventh Circuit has limited the scope of the automatic duty to protect to cases "which arise from the incarceration of prisoners or other forms of involuntary confinement." White v. Lemacks, 183 F.3d 1253, 1257 (11th Cir. 1999). The Eleventh Circuit has held that an employment relationship in which an "employee would risk losing her job if she did not submit to unsafe job conditions does not convert a voluntary employment relationship into a custodial relationship." Id. Similarly, the Court had held that school children, even though they are not free not to go to school, are not "in custody" for substantive due process purposes. See Nix v. Franklin County School Dist., 311 F.3d 1373, 1378 (11th Cir. 2002). The United States Supreme

Court has also limited the duty to protect.  See Collins v. City of Parker Heights, 503 U.S. 115, 127-28 (1992) (listing the situations in which the Court has held that the substantive due process clause imposes a duty on the state to take care of those who have already been deprived of their liberty, with the only situations being cases in which the plaintiff was physically confined by the state, for example, as a pretrial detainee, person confined in a mental institution, prisoner, and persons under arrest).  Therefore a duty to protect from private violence automatically arises in the custodial setting, that is, when the state takes away an individual's ability to take care of himself.  Outside of the custodial relationship, the state does not have a duty to protect an individual from private violence, and can only be liable for such violence under the due process clause when "an official's act or omission is arbitrary[] or conscience shocking." White, 183 F.3d 1253, 1257 (11th Cir. 1999).

According to the allegations in the complaint, the decedent was not confined when he was murdered by John David Brown.  On the contrary, the allegations describe the fact that "[decedent] was released from jail on his own recognizance; he did not have to post any bond." (Complaint, ¶ 20).  Consistent with the United States Supreme Court and the Eleventh Circuit's reluctance to expand the scope of the due process clause and because the decedent was not in

jail when he was murdered by John David Brown, the decedent was not "in custody" at the time of the events in question.

The Plaintiff also contends that Defendants Harrison and Harris owed a duty to protect decedent from the criminal acts of Brown because decedent had a "special relationship" with the Defendants and the Defendants "created the danger." (Brief in Opposition at p., 6-12). Plaintiff contends that even after White, "both the special relationship and state created danger doctrines [are] good law." Contrary to Plaintiff's declaration, the Eleventh Circuit in White held that the special relationship and special danger doctrines "are no longer good law." White, 183 F.3d at 1259. The Court found in White that "under Collins, state and local government officials violate the substantive due process rights of individuals not in custody only when those officials cause harm by engaging in conduct that is "arbitrary, or conscience shocking, in a constitutional sense," and that standard is to be applied narrowly." "While deliberate indifference to the safety of government employees in the workplace may constitute a tort under state law, it does not rise to the level of substantive due process violation under the federal Constitution." Id. The Court went a step further and expressly pronounced Cornelius v. Town of Highland Lake, 880 F.2d 348 (11th Cir. 1989) dead and buried and replaced by Collins regarding the law on substantive due process when

a citizen who is not in custody claims that a governmental unit, agency, or official has caused [him] harm.  In <u>Waddell v. Hendry County Sheriff's Office</u>, 329 F.3d 1363, 1305 (11th Cir. 2003), the Eleventh Circuit reaffirmed the standard adopted in <u>White</u> that "conduct by a governmental actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense."

Plaintiff further contends that Defendants Harrison and Harris had a duty to protect decedent under Alabama state law.  Federal law, not state law, determines the existence of substantive due process rights.  <u>See</u> <u>Knight v. Jacobson</u>, 300 F.3d 1272, 1276 (11th Cir. 2002) ("While the violation of state law may (or may not) give rise to a state tort claim, it is not enough by itself to support a claim under section 1983.").  In addition, federal substantive due process law is in no way defined by or coextensive with state tort law.  "Because the Due Process Clause 'does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society,' we have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law."  <u>Collins</u>, 503 U.S. at 128.  <u>See also</u> <u>McKinney v. Pate</u>, 20 F.3d 1550, 1556 (11th Cir. 1994) (explaining that "remaining largely outside the scope of

substantive due process jurisprudence [is] tort law").   The existence of a duty under state law is wholly irrelevant to the determination of whether there exists a duty under federal law for substantive due process purposes.

In addition, the Plaintiff contends that Brown's murder of decedent resulted in a due process violation because Defendants Harrison and Harris were deliberately indifferent to a risk to decedent and that such deliberate indifference shocks the conscience.  Even taken the facts  as Plaintiff alleges them, the facts do not rise to the level of conscience shocking.  The fact that Defendants Harrison and Harris allegedly did not follow "protocol" when arranging for the release of the decedent is not conscience shocking, even if the release violated state law.  See Waddell, 329 F.3d at 1306-07 ("[N]o substantive due process exists to be protected generally from the release from confinement of persons convicted of crimes– even if the release violates state law.")  Further Plaintiff has not presented any case law that the decedent had a substantive due process right to be held until his parole officers said that he could be released.  The complaint also does not allege that the officers knew at the time they arranged for decedent to be released that doing  so "would very, very probably cause" his death.  See Waddell, 329 F.3d at 1307.  The complaint alleges that the decedent had been a drug informant for the City of Athens in the past, without being murdered.  (Complaint, ¶ 19).

The use of decedent as a confidential informant does not rise to the level of conscience shocking.  The Eleventh Circuit has explained that even intentional actions by officials will seldom rise to the level of conscience shocking.  See Nix v. Franklin County School Dist., 311 F.3d 1373, 1376 (11th Cir. 2002).  In this case there is no allegation that Defendants Harrison and Harris in any way intended for Brown to murder decedent.  It would not have been shocking for the officers to learn that a drug dealer would not be pleased with a confidential informant cooperating with the government.  That sort of danger is inherent in using confidential informants.  The complaint does not allege that the decedent was unaware of the risks of being an informant.  In fact, the complaint alleges that the decedent was experienced in drug transactions and experienced as a confidential informant.  (Complaint, ¶ 19).  The complaint does not allege that Officers Harrison and Harris forced the decedent to set up Brown.  In fact, the complaint alleges that the decedent decided to cooperate for what he thought was his own benefit–"in exchange for leniency or not being charged."  (Complaint, ¶ 18).  Under the facts of this case, where an individual decided to become an informant, was experienced in making drug transactions as an informant, and there are no allegations of maliciousness on the part of the officers, Defendants Harrison's and Harris's actions do not rise to the level of conscience shocking to

warrant a due process violation.

**C.  Qualified Immunity 42 U.S.C. § 1983 As To Defendants Harrison and Harris**

_____The threshold inquiry a court must undertake in a qualified immunity analysis is whether the allegations, if true, establish a constitutional violation. Hope v. Pelzer, 536 U.S. 730, 736 (2002).  If a state official deprives an individual of a constitutional right, the state official will only be liable if his actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 739.  As noted above, Defendants Harrison and Harris did not deprive the decedent of a constitutional right.  Assuming, however, that Defendants Harrison and Harris deprived the decedent of a constitutional right, the state of the law at the time of deprivation must have been "clearly established" before a government actor can be said to have "fair warning" that the alleged conduct was unconstitutional.

The Supreme Court has developed an objective-reasonableness test for evaluating claims of qualified immunity in section 1983 cases.  Under this test, "government officials performing  discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982). The Eleventh Circuit has observed that because "qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." <u>Lassister v. Alabama A&M Univ.</u>, 28 F.3d 1146, 1149 (11th Cir. 1994).

The Eleventh Circuit employs a two-pronged analysis for determining whether the qualified immunity defense, as defined in <u>Harlow</u>, protects a government actor from individual section 1983 liability. To invoke the qualified immunity defense, the police officer has the initial burden of proving that he was acting within the scope of his discretionary authority at the time the alleged wrongful act occurred. <u>Stough v. Gallagher</u>, 967 F.2d 1523, 1526 (11th Cir. 1992); <u>Rich v. Dollar</u>, 841 F.2d 1558, 1562 (11th Cir. 1988). Under the first prong, all that is required is for the police officer to show "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." <u>Rich</u>, 841 F.2d at 1564. Plaintiff alleges that Defendants Harrison and Harris were not acting within the scope of their discretionary authority because Defendants released the decedent in violation of state law.[3] (Brief in Opposition at p. 21-23). In

_____

[3] The test for qualified immunity under U.S.C. §1983 is determined by federal law. Under Alabama state law, discretionary function immunity, like federal qualified immunity,

determining whether this test is met, there is no analysis of whether the police officer actually acted lawfully.  See Sims v. Metropolitan Dade County, 972 F.2d 1230, 1236 (11th Cir. 1992).  Rather, the issue is whether "the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of [the police officer's] discretionary duties."  Harbert Int'l. Inc. V. James, 157 F.3d 1271, 1282 (11th Cir. 1998).  If the first prong is satisfied, the burden then shifts to the plaintiff to show lack of good faith on the part of the police officer.  Id.  The plaintiff can satisfy this burden only by proving that the police officer's conduct violated "clearly established" constitutional law or a federal statute.  Id.  In Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002), the Eleventh Circuit clarified the requirements of the defense of qualified immunity in the Eleventh Circuit following Hope v. Pelzer, 536 U.S. 730 (2002).

In Vinyard, the Eleventh Circuit described the categories of ways in which prior constitutional law can be said to have been "clearly established" before a governmental actor can be said to have "fair warning" that the alleged conduct was unconstitutional.  The first category – cases which the Eleventh Circuit

---

protects officers from liability for acts taken during the performance of their official duties. Unlike federal qualified immunity, however, state law discretionary function immunity can be lost if the officer was acting in violation of state law.  See, e.g., Williams v. Crook, 741 So. 2d 1074, 1077-78 (Ala. 1999).  Since Defendants Harrison and Harris assert the defense of qualified immunity from Plaintiff's federal claims, the state test is wholly inapplicable.

denominated as "obvious clarity" cases – would be if the words of the pertinent

federal statute or federal constitutional provision . . . would be specific enough to

establish clearly the law applicable to particular conduct in circumstances and to

overcome qualified immunity, even in the total absence of case law." Id. at 1350.

The Eleventh Circuit explained "obvious clarity" cases as being cases where "the

words of a federal statute or federal constitutional provision may be so clear and

the conduct so bad that case law is not needed to establish that the conduct cannot

be lawful." Id.   The Court gave as examples of "obvious clarity" cases in the

excessive force context as "cases . . . involving conduct 'far beyond the hazy

border between excessive and unacceptable force.'" Id. at 1350 n. 18.

    The second category is where, for example, while "the conduct is not so

egregious as to violate [a constitutional provision] on its face[,] . . . some broad

statements of principles in case law . . . can clearly establish law applicable in the

future to different sets of detailed facts." Id. at 1351.  The Eleventh Circuit gave

as an example of this second category, situations where "some authoritative

judicial decision decides a case by determining that 'X Conduct' is

unconstitutional without tying that determination to a particularized set of facts."

Id.  With regard to this second category, however, the Eleventh Circuit cautioned

that simply because there exist broad statements of principle that a general

category of conduct is unconstitutional, such is insufficient to clearly establish the law so as to give "fair warning" to a governmental official that his or her conduct was unlawful.  See id. at 1351 n. 21.  It must give fair warning "with obvious clarity" to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted. Id. at 1351.

The third category as described by the Eleventh Circuit, is where there is "no case law with a broad holding of "X" that is not tied to particularized facts . . ." Id. at 1351.  In such circumstances, the Eleventh Circuit explained that "we must then look at precedent that is tied to the facts." Id. at 131.  The Eleventh Circuit stated that this category requires the court to "look for cases in which the Supreme Court or we, or the pertinent state Supreme Court [footnote omitted] has said that 'Y Conduct' is unconstitutional in 'Z Circumstance.'" Id.  "For the third type of notice or warning, the Supreme Court in Hope explained that "in some circumstances . . . a very high degree of prior factual particularity may be necessary." Id. at 1352 quoting Hope, 536 U.S. at 740-41.

This case is not a first category "obvious clarity" case – there is no federal constitutional provision or federal statute specifically describing and outlawing the use of confidential informants by municipal police officers, even when the use

17

of such informants is dangerous, and the conduct of Officers Harrison and Harris is not "conduct so bad that case law is not needed to establish that the conduct cannot be lawful."  This case also does not fall into the second category of the cases described in <u>Vinyard</u> where a public official can be said to have prior "fair warning" that his or her conduct was unconstitutional.  This is not a case where "broad statements of principle . . . not tied to particularized facts" can be said to have clearly established what Defendants Harrison and Harris did or did not do to be unlawful.

Rather, the claims of Plaintiff fall into the third category of cases recognized under <u>Vinyard</u> – that category of cases where the court is required to "look at precedent that is tied to the facts" – in determining whether it has previously been "clearly established" that the alleged conduct at issue was unlawful.   In determining whether the case law is "clearly established we must  look to the decisions of the United States Supreme Court, Eleventh Circuit, or Alabama Supreme Court to see if such courts have previously determined the Defendants' alleged conduct to be unlawful." See <u>Vinyard</u>, 311 F.3d at 1351 n. 22 (stating that the requirement that the case law come from one of these three sources survives <u>Hope</u>).   Before stripping Defendants Harrison and Harris of their qualified immunity in this action, Plaintiff must show that case law with "a very high degree

18

of prior factual particularity." Id.  There is no law, now or then, that would have given these officers fair warning that, without an intent to harm, their sending a confidential informant to make a drug transaction with a drug dealer, even with knowledge of potential danger, violated the informant's due process right. Accordingly,  Defendants Harrison and Harris are entitled to qualified immunity and their motions to dismiss the Plaintiff's claims against Defendants Harrison and Harris in their individual capacity are due to be **GRANTED**.

### D. Discretionary Function Immunity and Common Law Immunity

In the Defendants' motions to dismiss, Defendants assert that they are entitled to immunity from Plaintiff's state law claims under both statutory discretionary function immunity (ALA. CODE § 6-5-338(a) (1975)) and common law discretionary function immunity (§875D of the Restatement 2d of Torts).[4]

A public officer is entitled to both common law discretionary function immunity under  § 895D and to statutory discretionary function immunity under

---

[4] Defendants Harrison and Harris do not provide an analysis in their brief in support of their motions to dismiss as to statutory discretionary function immunity under ALA. CODE § 6-5-338(a) (1975) and common law discretionary function immunity under §875D of the Restatement 2d of Torts.  Since all the Defendants cross-referenced and relied on sections from all the briefs in support of the motions to dismiss, the statutory discretionary function immunity under ALA. CODE § 6-5-338(a) (1975) and common law discretionary function immunity under §875D of the Restatement 2d of Torts analysis in the Brief in Support of Motion to Dismiss of Defendant Wayne Harper is applicable to the motions to dismiss as to Defendants Harrison and Harper.

§6-5-338(a), "unless the officer's conduct is so egregious as to amount to willful and malicious conduct or conduct engaged in bad faith." <u>Couch v. City of Sheffield</u>, 708 So.2d 144, 153 (Ala. 1998); <u>Ex parte Davis</u>, 721 So.2d 685, 689 (Ala. 1998). The procedural framework for analyzing both statutory and common law discretionary function immunity claims is a two-pronged inquiry. <u>Sheth v. Webster</u>, 145 F.3d 1231, 1238-1239 (11th Cir. 1998); <u>Ex parte Davis</u>, at <u>id</u>. The first prong involves proof by the defendant public officer that the officer was "engaged in the performance of discretionary functions at the time the alleged torts occurred." <u>Sheth</u>, 145 F.3d at 1238; <u>Ex parte Davis</u> at <u>id</u>. If the actions complained of were discretionary acts, "the burden shifts to the plaintiff to demonstrate that the defendants acted in bad faith, with malice or willfulness in order to deny them immunity." <u>Sheth</u>, 145 F.3d at 1239; <u>Ex parte Davis</u> at <u>id</u>.

"Discretionary functions [are] 'those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances.'" <u>Ex parte Duvall</u>, 782 So.2d 244, 248 (Ala. 2000) (quoting <u>Ex parte City of Montgomery</u>, 758 So.2d 565, 569 (Ala. 1999). The Plaintiff has provided no factual support to establish that the Defendants acted in bad faith, with malice or willfulness in order to deny them immunity. In this case, there is no allegation that Defendants Harrison and Harris in any way intended for

Brown to murder decedent.  The complaint does not allege that Officers Harrison and Harris forced decedent to set up Brown.  In fact, the complaint alleges that the decedent decided to cooperate for what he thought was his own benefit - "in exchange for leniency or not being charged." (Complaint, ¶ 18).  Hence, there are no facts alleged by the Plaintiff to suggest that the Defendants' conduct was so egregious as to amount to willful and malicious conduct or conduct engaged in bad faith.  Accordingly, the Defendants are entitled to statutory discretionary function immunity under ALA. CODE § 6-5-338(a) (1975) and common law discretionary function immunity under §875D of the Restatement 2d of Torts.

### E.  Plaintiff's Claims Under §14-6-105, Code of Alabama (1975)

Plaintiff alleges in her complaint a claim under ALA. CODE §14-6-105 (1975) against the Defendants Harris and Harrison.  Section 14-6-105 is an Alabama state statute which provides that jails in which prisoners are confined are required to have a "deputy, watchman or attendant, whose duty it shall be to watch the jail or prison at night for the prevention of escapes and fire and to aid in case of sickness among the prisoners, and who shall have access to the jail or prison and to the prisoners."  Plaintiff contends that Anthony Ryan McLemore "comes within the purview and protection of the above ordinance by virtue of the fact that he was an informant for the City of Athens Police Department, which was

21

overseen by the defendants." (Complaint, ¶ 40.)   Plaintiff alleges that the defendants violated Section 14-6-105 by failing to provide the supervision mandated under §14-6-105, constituting negligence per se.

Plaintiff has no maintainable claim under §14-6-105 for two reasons.  First, any such claim did not survive the death of Plaintiff's decedent, and Plaintiff's sole claim arising out of the death of Anthony McLemore is a wrongful death claim under ALA. CODE §6-5-410 (1975).  Second, such statute does not provide a private right of action against any of the defendants in this action in any event.

It is not clear as to whether Plaintiff intends for this claim to be actionable under §1983 or intends for this claim to give rise to some state law cause of action.  Nevertheless, any such claim did not survive the death of Anthony Ryan McLemore in any event.  Since §1983 does not provide for the survival of claims, federal courts turn under 42 U.S.C. §1988 to state law to fill this gap.  Section 1988 directs federal courts to turn to "the common law, as modified and changed by the constitution and statutes of the [forum] state," as long as these are "not inconsistent with the Constitution and laws of the United States" when federal law is deficient in provisions necessary to furnish suitable remedies.  In Brazier v. Cherry, 293 F.2d 401 (5th Cir. 1961), the then Fifth Circuit interpreted that Section 1988 and held that in the absence of a federal survivorship law, courts should look

to state survivorship law.

The Alabama Supreme Court has held that, under ALA. CODE §6-5-462 (1975), "an unfiled tort claim does not survive the death of the person with the claim." McDuffie v. Hopper, et al., 982 F.Supp. 817 (M.D. Ala. 1997)(quoting Malcolm v. King, 686 So.2d 231 (Ala. 1996)).  However, the statute has been held not to abate actions for wrongful death.  Mattison v. Kirk, 497 So.2d 120 (Ala. 1986), overruled on other grounds, King v. National Spa & Pool Inst., Inc., 607 So.2d 1241 (Ala. 1992).  The Plaintiff has not presented any facts that a claim under §14-6-105 was filed prior to the death of Anthony Ryan McLemore. Therefore, this court holds that Plaintiff's claims under §14-6-105, which were not filed at the time of Anthony Ryan McLemore's death, abated upon his death. However, Plaintiff's sole claim arising out of McLemore's death in this action, the wrongful death claim under ALA. CODE §6-5-410 (1975), does survive.

Further, Plaintiff has no maintainable claim under §14-6-105 because there is no authority providing for a private right of action for any alleged violation of that code provision. Absent any such authority, no such cause of action exists. See Roberts v. City of Geneva, 114 F.Supp. 2d 1199, 1215 (M.D. Ala. 2000)(quoting Leonard v. Enterprise Rent A Car Co., 38 F.Supp. 2d 982, 984 (M.D. Ala. 1999) ("A federal court may not read a private cause of action into a

state statute absent 'clear and specific evidence' that the legislature intended to authorize such cause of action.")). There is no language contained in §14-6-105 which indicates that a private right of action for money damages for violation of that code provision is authorized or available.  In addition, Plaintiff does not cite any authority creating a private cause of action for violations of ALA. CODE §14-6-105 (1975).  Accordingly, Defendants Harris's and Harrison's motions to dismiss as to Plaintiff's  alleged claims under  §14-6-105 are due to be **GRANTED**.

### F.  <u>Wrongful Death Claim</u>

The Plaintiff asserts a wrongful death claim under ALA. CODE §6-5-410 (1975).  As noted above, the Alabama Supreme Court has held that, under ALA. CODE §6-5-462 (1975), "an unfiled tort claim does not survive the death of the person with the claim." <u>McDuffie v. Hopper, et al.</u>, 982 F.Supp. 817 (M.D. Ala. 1997)(quoting <u>Malcolm v. King</u>, 686 So.2d 231 (Ala.  1996)).  However, the statute has been held not to abate actions for wrongful death. <u>Mattison v. Kirk</u>, 497 So.2d 120 (Ala. 1986), overruled on other grounds, <u>King v. National Spa & Pool Inst., Inc.</u>, 607 So.2d 1241 (Ala. 1992).  Therefore, Plaintiff's sole claim arising out of McLemore's death in this action is a wrongful death claim under ALA. CODE §6-5-410 (1975).  Although Plaintiff's wrongful death claim under ALA. CODE §6-5-410 (1975) does survive McLemore's death, Defendants

Harrison and Harris are entitled to immunity under both statutory discretionary function immunity (ALA. CODE § 6-5-338(a) (1975)) and common law discretionary function immunity (§875D of the Restatement 2d of Torts) as discussed in Section D.

Accordingly, Defendants Harris's and Harrison's motions to dismiss as to Plaintiff's wrongful death claim under §6-5-410 are due to be **GRANTED**.

### G.  Plaintiff's Claims Under Principles of Agency Law

Plaintiff claims that Defendants Harris and Harrison are liable, under principles of agency law,  for the alleged assault and battery of decedent by John Brown.  According to the complaint, "John David Brown was the agent of the Co-Defendants and/or they ratified his conduct." (Complaint, ¶ 49).  In contrast to the Plaintiff's allegations that Brown served as an agent of Defendants, the Plaintiff also asserts in the complaint that Defendants Harris and Harrison sent Anthony McLemore, a police informant,  to set up a buy from John Brown. (Complaint, ¶ 17; 23.)  The Defendants assert that the Plaintiff's claim is not maintainable against Defendants Harris and Harrison because Brown, a drug dealer whom the defendants, according to the allegations in the complaint, were attempting to "set up," was not an agent of defendants as a matter of law.

Under Alabama law, "the test for agency is whether the alleged principal

has retained a right of control over the actions of the alleged agent. See Ex parte Wild West Social Club, Inc., 806 So.2d 1235, 1241 (Ala. 2001). See also Gist v. Vulcan Oil Co., 640 So. 2d 940, 942 (Ala. 1994); Butler v, Aetna Fin. Co., 587 So. 2d 308, 310 (Ala. 1991) ("It is axiomatic that for an agency relationship to exist, there must be a right of control by the principal over the agent.") Plaintiff's allegations do not assert and contradict that the Defendants had a right to control the actions of John Brown, a drug dealer. In fact, the Plaintiff alleges in the complaint that the Defendants utilized the decedent in order to "set up" Brown. (Complaint, ¶ 17, 23.) Plaintiff has not pled a set of facts to maintain a claim as a matter of law that Defendants exercised or controlled the behavior of Brown, the alleged agent.

Further, the allegation that the Defendants ratified Brown's conduct is also not maintainable. The doctrine of ratification imposes liability on a principal for an act committed by the principal's agent even when the act was beyond the scope of the agent's authority, if the principal takes certain steps to ratify the act. See CIT Financial Services, Inc. v. Bowler, 537 So.2d 4, 5 (Ala. 1988) ("A ratification occurs when a principal retains the benefits resulting from his agent's unauthorized acts with knowledge of the material facts surrounding the transaction." See also Tuskegee Institute v. May Refrigeration Co., 344 So.2d 156, 158 (Ala. 1997); Gray v. Great American Reserve Ins. Co., 495 So.2d 602,

607 (Ala. 1986).   The definition of ratification presupposes that an agency relationship exists between the actor and the one whom the plaintiff seeks to hold liable for the act.   Since under no set of facts consistent with those Plaintiff has pled can Plaintiff support a claim that Brown was an agent of the Defendants, the issue of ratification is legally irrelevant.   Assuming that ratification is relevant, under no set of facts could Plaintiff establish that the Defendants accepted or retained benefits resulting from the murder of  the decedent.

Accordingly, the Defendants' motions to dismiss as to Plaintiff's claims under principles of agency law are due to be **GRANTED**.

## V. Conclusion

For the reasons set forth above, the Defendants' motions to dismiss are due to be **GRANTED**.  The opinion shall be carried out by a separate Order.

**DONE** and **ORDERED** this 19th day of May, 2005.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

27