FILED

2005 May-19  PM 01:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION



SYLVIA VAUGHN, as Administratrix, ]
of the estate of ANTHONY RYAN      ]
McLEMORE                           ]
                                   ]
    PLAINTIFF,             ]
                                   ]
    v.                     ]Case No.  CV-03-VEH-3052-S
                                   ]
THE CITY OF ATHENS, et. al.,       ]
                                   ]
    DEFENDANTS.            ]

## OPINION

This Court has before it the Defendant Wayne Harper's Motion to Dismiss.

(Doc. 13)

## I.  Procedural History

Plaintiff Sylvia Vaughn, as the Administratrix for the estate of Anthony

Ryan McLemore,  the deceased, commenced this action on November 13, 2003,

by filing a complaint in this Court alleging violations of 42 U.S.C. § 1983 (Count

I); ALA. CODE § 14-6-105 (1975) (Count II);  ALA. CODE § 6-5-410 (1975) (Count

III); and asserting that while acting as an agent of the other co-defendants, John

Brown assaulted and battered Anthony Ryan McLemore (Count IV). The Plaintiff

1

filed a complaint against the Defendants, City of Athens, Alabama Chief of Police Wayne Harper, Officer Tracy Harrison, Officer Trevor Harris, and John Brown. On December 3, 2003, the Defendants contemporaneously filed separate motions to dismiss.[1] Defendant Harper filed a motion to dismiss on the following grounds: (1) failure to state a claim upon which relief may be granted, (2) Plaintiff's official capacity claims against Defendants are redundant and superfluous, (3) Defendants have qualified immunity from the Plaintiff's claims in this action under 42 U.S.C. § 1983, (4) Defendant has both statutory discretionary function immunity under ALA. CODE § 6-5-338(a)(1975) and common law discretionary function immunity under § 875D of the Restatement 2d of Torts from the Plaintiff's state law claims, (5) Plaintiff's claims premised on an alleged violation of ALA. CODE §14-6-105 (1975) did not survive the death of Plaintiff's decedent and are merged into the Plaintiff's wrongful death claim under ALA. CODE §6-5-410 (1975), (6) Plaintiff has no maintainable claim under ALA. CODE § 14-6-105 (1975), and (7) Defendant Harper has failed to meet the heightened pleading standard applicable to claims brought under 42 U.S.C. § 1983 where the defense of qualified immunity has been asserted by a defendant.

---

[1] The motions to dismiss filed by the other four remaining Defendants (City of Athens, Alabama, Officer Tracy Harrison, Officer Trevor Harris, and John Brown) are the subject of separate pending motions to dismiss filed contemporaneously with the motion to dismiss regarding Defendant Harper.

## II.  Standard of Review

## A.  Motion To Dismiss

"When considering a motion to dismiss for failure to state a claim, a court must accept the allegations in the complaint as true, construing them in the light most favorable to the plaintiff."  Murphy v. FDIC, 208 F.3d 959, 962 (11th Cir. 2003) (quoting Kirby v. Siegelman, 195 F. 3d 1285, 1289 (11th Cir.  1999)). Unless it appears beyond doubt that the Plaintiffs could prove no set of facts entitling them to relief, neither the complaint nor any count therein may be dismissed.  Conley v. Gibson, 335 U.S. 41, 45-36 (1957); Harris v. Proctor & Gamble Cellulose, 73 F. 3d 321, 324 (11th Cir. 1996).

## III.  Allegations of Complaint[2]

The complaint alleges that "on August 18, 2002, Officer Trevor Harris arrested Anthony McLemore, and placed him in the Athens City Jail on the charges of Unlawful Possession of Controlled Substances, a felony."  (Complaint, ¶ 11.) According to the complaint, "under Alabama law, a person cannot have a signature bond for a felony, and he must go through the county jail." (Complaint, ¶ 12.)  The complaint alleges that "Anthony McLemore was already on probation

---

[2] The Court understands that the allegations set forth in the Complaint are strictly those of the Plaintiff. Given the standard of review, the Court must accept such allegations as true for the purpose of granting or denying a motion to dismiss.

at the time of his arrest." (Complaint, ¶ 13.) Plaintiff alleges that "the arrest violated the terms of Anthony McLemore's probation." (Complaint, ¶ 14.) Plaintiff also alleges that "Anthony McLemore's parole officer, Bruce Graham, was notified of Anthony McLemore's arrest." (Complaint, ¶ 15.) The complaint alleges that, "Bruce Graham placed a hold on McLemore, meaning he should not be released from the jail because of the terms of his parole." (Complaint, ¶ 16.) The complaint also alleges that, "the Defendants, Trevor Harris and Tracy Harrison of the Athens Police Department, worked out an agreement with Anthony McLemore where he agreed to cooperate by setting up a drug dealer, John David Brown." (Complaint, ¶ 17.) According to the complaint, "Anthony McLemore agreed to cooperate in exchange for leniency or not being charged." (Complaint, ¶ 18.) The Plaintiff alleges that, "Anthony McLemore has helped the Athens Police Department in the past on some drug cases in exchange for consideration." (Complaint, ¶ 19.) According to the complaint, "Anthony McLemore was released from the jail on his own recognizance; he did not have to post any bond." (Complaint, ¶ 20.) The complaint alleges that, "Harris and Harrison approved of McLemore's release." (Complaint, ¶ 21.) According to the complaint, "Bruce Graham never gave the Athens Police Department permission to release Anthony McLemore." (Complaint, ¶ 22.) Plaintiff alleges that, "Harris

4

and Harrison sent Anthony McLemore to set up a buy from John Brown." (Complaint, ¶ 23.) According to the complaint, "Standard protocol is to search the informant and then wire him. The informant is followed within a few blocks of the deal and the transaction is listened to in case something goes bad." (Complaint, ¶ 24.)

Plaintiff contends in her complaint that before McLemore was sent to "set up" the buy from Brown, the officers were warned that Brown would attempt to kill McLemore "for trying to set him up for criminal prosecution." (Complaint, ¶ 25.) The complaint alleges that the officers "ignored the warnings and sent Anthony anyway." (Complaint, ¶ 26.) The complaint alleges that no "arrangements were made to protect Anthony." (Complaint, ¶ 27.) Plaintiff alleges that McLemore was killed by Brown "on August 20, 2002, for trying to set him up." (Complaint, ¶ 28.)

According to the complaint, "Anthony McLemore would be alive today if the defendants had heeded the warnings and never released him." (Complaint, ¶ 29.) Plaintiff further alleges that McLemore "would also be alive today if the defendants had followed proper protocol." (Complaint, ¶ 30.) The complaint alleges that "Defendants Athens and Harper negligently, wantonly, and with deliberate indifference, supervised and improperly trained the jail staff and the

officers." (Complaint, ¶ 32.) The Plaintiff further alleges that "Defendants were well aware of the lack of safety and supervision, which led to Anthony McLemore's death." (Complaint, ¶ 33.)

## IV.  Applicable Substantive Law and Analysis

### A.  <u>Defendant Harper Official Capacity Claim</u>

The Plaintiff sues the Defendant Harper in his official capacity. The Plaintiff concedes that these claims must be dismissed because the City of Athens, Alabama is a separately named defendant in this action. Therefore, the Plaintiff's official capacity claims against Defendant Harper are redundant and should be dismissed. "Official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.. . . [A]n official-capacity suit is, in all respects other than name, to be treated as the suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985) (internal quotation marks omitted). Accordingly, Defendant Harper's motion to dismiss the Plaintiff's claims against Defendant Harper in his official capacity is due to be **GRANTED**. The Plaintiff's claims against Defendant Harper in his official capacity are **DISMISSED**.

### B.  <u>Qualified Immunity 42 U.S.C. § 1983 As To Defendant Harper</u>

Defendant Chief Harper has moved the Court to dismiss the Plaintiff's

claims alleged against him under 42 U.S.C. § 1983 for failure to state a maintainable claim and has also asserted the defense of qualified immunity. The Plaintiff asserts that under the factual allegations in this case, the claims against Defendant Harper should not be dismissed because he "negligently, wantonly, and with deliberate indifference, supervised and improperly trained the [Athens City] jail staff and the police officers" under his command. (Complaint, ¶ 32).

The threshold inquiry a court must undertake in a qualified immunity analysis is whether the allegations, if true, establish a constitutional violation. Hope v. Pelzer, 536 U.S. 730, 736 (2002). If a state official deprives an individual of a constitutional right, the state official will only be liable if his actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 739. The state of the law at the time of deprivation must have been "clearly established" before a government actor can be said to have "fair warning" that the alleged conduct was unconstitutional.

The Supreme Court has developed an objective-reasonableness test for evaluating claims of qualified immunity in section 1983 cases. Under this test, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

7

have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982).  The Eleventh Circuit has observed that because "qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." <u>Lassister v. Alabama A&M Univ.</u>, 28 F.3d 1146, 1149 (11th Cir. 1994).

The Eleventh Circuit employs a two-pronged analysis for determining whether the qualified immunity defense, as defined in <u>Harlow</u>, protects a government actor from individual section 1983 liability.  To invoke the qualified immunity defense, the police officer has the initial burden of proving that he was acting within the scope of his discretionary authority at the time the alleged wrongful act occurred. <u>Stough v. Gallagher</u>, 967 F.2d 1523, 1526 (11th Cir. 1992); <u>Rich v. Dollar</u>, 841 F.2d 1558, 1562 (11th Cir. 1988).  Under the first prong, all that is required is for the police officer to show "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." <u>Rich</u>, 841 F.2d at 1564.  In determining whether this test is met, there is no analysis of whether the police officer actually acted lawfully. <u>See</u> <u>Sims v. Metropolitan Dade County</u>, 972 F.2d 1230, 1236 (11th Cir. 1992).  Rather, the issue is whether "the act complained of, if done for a proper purpose, would be within, or reasonably

related to, the outer perimeter of [the police officer's] discretionary duties." Harbert Int'l. Inc. V. James, 157 F.3d 1271, 1282 (11th Cir. 1998).  If the first prong is satisfied, the burden then shifts to the plaintiff to show lack of good faith on the part of the police officer.  Id.  The plaintiff can satisfy this burden only by proving that the police officer's conduct violated "clearly established" constitutional law or a federal statute.  Id.  In Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002), the Eleventh Circuit clarified the requirements of the defense of qualified immunity in the Eleventh Circuit following Hope v. Pelzer, 536 U.S. 730 (2002).

In Hope v. Pelzer, 536 U.S. 730, 741 (2002), the Supreme Court stated that the "salient question" for purposes of determining whether a violation of clearly established law has occurred is "whether the state of the law [at the time of the challenged conduct] gave [the government actor] fair warning that [his or her] alleged treatment [of the plaintiff] was unconstitutional."  The Supreme Court has cautioned, however, that the inquiry into whether a constitutional right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition."  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Unless a Plaintiff in a § 1983 case can point to a case that fairly warns the government actor of the unconstitutionality of the challenged conduct, qualified immunity

should protect the officer from liability under 42 U.S.C. § 1983.  See Wilson v. Layne, 526 U.S. 603, 504 (1999) (granting qualified immunity where plaintiff could not point to case law existing at the time of the incident which clearly established the rule of law upon which the plaintiff sought to rely); See also Vinyard v. Wilson, 311 F.3d 1340, 1351-1353 (11th Cir. 2002) recognizing that, based on the Supreme Court's decision in Hope that unless a constitutional provision directly prohibits the challenged conduct, or a case had previously held that the challenged conduct to be unconstitutional under any circumstances, before a government actor may be stripped of qualified immunity, a § 1983 plaintiff must show that case law with "a very high degree of factual particularity" had previously determined the conduct to be unconstitutional.

Further, the Plaintiff has not satisfied the heightened pleading requirements for § 1983 actions against Defendant Harper.  "Under the qualified-immunity defense, the defendants are immune from liability and even from trial if plaintiff's complaint fails to state a violation of 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th cir. 1992), cert. denied, sub nom, Deutsch v. Oladeinde, 507 U.S. 987, 113 S.Ct. 1586 (1993). See Lassiter v. Alabama A&M University, 28 F.3d 1146, 1149 quoting Hunter v.

Bryant, 502 U.S. 224, 112 S.CT. 534, 536 (1991). ("We repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.") In GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359 (11th Cir. 1998), the Eleventh Circuit made it clear that a heightened pleadings standard exists in this Circuit with regard to individual capacity claims in which qualified immunity is at issue.  In GJR Investments, the Court explained that "this Circuit, along with others, has heightened the application of Rule 8 with respect to Section 1983 cases in an effort to weed out non-meritorious claims, requiring that a Section 1983 plaintiff allege with some specificity the facts which make out its claim." GJR Investments, 132 F.3d at 1367.  The Eleventh Circuit discussed the heightened pleading requirement in Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) and held that "in examining the factual allegations in the complaint, we must keep in mind the heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity."

Plaintiff's allegation against Defendant Harper is a conclusory and vague allegation that Defendant Harper failed to properly train, supervise or monitor city police officers and jailers under his command.  (See Plaintiff's Brief in Opposition at p. 39).  The Plaintiff's allegation lacks the requisite level of specificity required under the Eleventh Circuit's heightened pleading standard to constitute a

11

maintainable claim against Defendant Harper in this action.   Based on the foregoing reasons, Defendant Harper is entitled to qualified immunity and his motion to dismiss the Plaintiff's claims against Defendant Harper in his individual capacity is due to be **GRANTED**.

### C. Plaintiff's State Law Tort Claims Against Chief Harper

Plaintiff's state law claims against Defendant Harper in this action are premised on an alleged failure to train or supervise the defendant police officers alleged to have been involved in the matters at issue in this case. Under ALA. CODE§ 6-5-338(a) (1975), law enforcement officers have statutory discretionary function immunity from state law tort claims arising out of the performance of a discretionary function within the line and scope of their law enforcement duties. In addition to the statutory discretionary function immunity available to law enforcement officers under §6-5-338(a), there is also a similar common-law discretionary function immunity to which public officials are also entitled.  This common law doctrine of discretionary function immunity provides that "public officials, including municipal employees, have substantive immunity from tort liability for actions taken while they are acting within the line and scope of their official duties and are engaged in the exercise of a discretionary function." Williams v. Crook, 741 So.2d 1074, 1076 (Ala. 1999).  See also Roden v. Wright,

646 So.2d 605, 610 (Ala. 1994).  The source of the common law doctrine of discretionary function immunity is § 895D of the Restatement 2d of Torts which governs immunity from tort liability of public officers.  Grant v. Davis, 537 So.2d 7 (Ala. 1988).  Because the doctrine was originally formulated to be applicable to claims against state officials engaged in the performance of their official duties, there was initially some confusion as to whether the doctrine also had applicability to county and municipal officers and employees.  Taylor v. Adams, 221 F.3d 1254, 1260-1261 (11th Cir. 2000).  However, federal and state courts in Alabama both now recognize the doctrine to be firmly applicable to claims against both city and county officers and employees.  Taylor at id.; Roden, 646 So. 2d at 609-11 (Doctrine applicable to county commissioner); Ex Parte City of Birmingham, 624 So.2d 1018, 1021 (Ala. 1993) (Doctrine applicable to various city officials); Crowne v. City of Athens, 733 So.2d 447, 449, 451 (Ala. Civ. App. 1999) (Doctrine applicable to city official); Marnon v. City of Dothan, 677 So.2d 755, 761 (Ala. Civ. App. 1995) (Doctrine applicable to city commissioners).  Common law discretionary function immunity is specifically applicable to police officers engaged in the performance of their duties.  See Crouch v. Whatley, 900 F.Supp. 1567, 1571-73 (M.D. Ala. 1995) (Doctrine applicable to municipal police officer).

A public officer is entitled to both common law discretionary function

immunity under § 895D and to statutory discretionary function immunity under §6-5-338(a), "unless the officer's conduct is so egregious as to amount to willful and malicious conduct or conduct engaged in in bad faith." <u>Couch v. City of Sheffield</u>, 708 So.2d 144, 153 (Ala. 1998); <u>Ex parte Davis</u>, 721 So.2d 685, 689 (Ala. 1998). The procedural framework for analyzing both statutory and common law discretionary function immunity claims is a two-pronged inquiry. <u>Sheth v. Webster</u>, 145 F.3d 1231, 1238-1239 (11th Cir. 1998); <u>Ex parte Davis</u> at 689. The first prong involves proof by the defendant public officer that the officer was "engaged in the performance of discretionary functions at the time the alleged torts occurred." <u>Sheth</u>, 145 F.3d at 1238; <u>Ex parte Davis</u> at 689. If the actions complained of were discretionary acts, "the burden shifts to the plaintiff to demonstrate that the defendants acted in bad faith, with malice or willfulness in order to deny them immunity." <u>Sheth</u>, 145 F.3d at 1239; <u>Ex parte Davis</u> at 689.

"Discretionary functions [are] 'those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances.'" <u>Ex parte Duvall</u>, 782 So.2d 244, 248 (Ala. 2000) (quoting <u>Ex parte City of Montgomery</u>, 758 So.2d 565, 569 (Ala. 1999)). Alabama and federal courts have recognized that the training or supervision of

14

employees, including police officers, constitutes a discretionary function.  <u>See</u>, <u>e.g.</u>, <u>L.S.B. v. Howard</u>, 659 So.2d 43, 44 (Ala. 1995) ("The exercise of supervisory functions is usually discretionary, because it requires 'constant decision making and judgment' by the person in the supervisory role. . . Howard's administration and direction of her teachers and teacher's aides necessarily require her to use her best judgment in making those decisions affecting her school; this is a discretionary function."); <u>Nance v. Matthews</u>, 622 So.2d 297, 301-302 (Ala. 1993); <u>Phillips v. Thomas</u>, 555 So.2d 81, 85 (Ala. 1989); <u>Marnon v. City of Dothan</u>, 677 So.2d 755, 761 (Ala. Civ. App. 1995).  <u>See also</u> <u>Ross v. State of Alabama</u>, 15 F.Supp. 2d 1173, 1196 (M.D. Ala. 1988) ("[T]he court finds that Defendant Parsons' actions in supervising Defendant Bowman were well within her discretionary authority.  Certainly it is well within the scope of authority of the County Director of the Houston County DHR to determine the appropriate training, supervision, and discipline for a DHR a social worker within her County. Accordingly, the court finds that Defendants Bowman and Parsons are entitled to substantive immunity on the state tort claims alleged in Plaintiffs' Amended Complaint."); <u>Williams v. Goldsmith</u>, 905 F.Supp. 996, 1003 (M.D. Ala. 1995) ("Count VI of the complaint alleges that Defendant Paul [a County Sheriff] 'negligently, recklessly and/or wantonly failed to supervise, instruct or train

Defendant Goldsmith in his duties as a Deputy Sheriff"…. Sovereign immunity includes a qualified immunity available to state officers acting within the general scope of their authority who perform discretionary functions…. State officials responsible for training other employees are entitled to qualified (or substantive) immunity from suits arising out of training activities…. Defendant Paul, as Sheriff of Coffee County, possessed the authority to train his deputies, and the exercise of this authority was a discretionary function, entitling him to sovereign immunity from this claim.  Therefore, Court VI, the claim against Shereff Paul for failure to train deputy Goldsmith, will be dismissed.") (citation omitted).

The training or supervision of the City of Athens police officers by Defendant Harper constitute a discretionary function.  Accordingly, Defendant Harper is entitled to statutory and common-law discretionary function immunity as to the Plaintiff's state tort law claims against him.

### D. **Plaintiff's Claims Under §14-6-105, Code of Alabama (1975)**

Plaintiff alleges in her complaint a claim under ALA. CODE §14-6-105 (1975) against Defendant Harper.  Section 14-6-105 is an Alabama state statute which provides that jails in which prisoners are confined are required to have a "deputy, watchman or attendant, whose duty it shall be to watch the jail or prison at night for the prevention of escapes and fire and to aid in case of sickness among

the prisoners, and who shall have access to the jail or prison and to the prisoners." Plaintiff contends that Anthony Ryan McLemore "comes within the purview and protection of the above ordinance by virtue of the fact that he was an informant for the City of Athens Police Department, which was overseen by the defendants." (Complaint, ¶ 40.) Plaintiff alleges that the defendants violated Section 14-6-105 by failing to provide the supervision mandated under §14-6-105, constituting negligence per se.

Plaintiff has no maintainable claim under §14-6-105 for two reasons. First, any such claim did not survive the death of Plaintiff's decedent and Plaintiff's sole claim arising out of the death of Anthony McLemore is a wrongful death claim under ALA. CODE §6-5-410 (1975). Second, such statute does not provide a private right of action against any of the defendants in this action in any event.

It is not clear as to whether Plaintiff intends for this claim to be actionable under §1983 or contends for this claim to give rise to some state law cause of action. Nevertheless, any such supported claim did not survive the death of Anthony Ryan McLemore in any event. Since §1983 does not provide for the survival of claims, federal courts turn under 42 U.S.C. §1988 to state law to fill this gap. Section 1988 directs federal courts to turn to "the common law, as modified and changed by the constitution and statutes of the [forum] state," as

long as these are "not inconsistent with the Constitution and laws of the United States" when federal law is deficient in provisions necessary to furnish suitable remedies.  In <u>Brazier v. Cherry</u>, 293 F.2d 401 (5th Cir. 1961), the then Fifth Circuit interpreted Section 1988 and held that, in the absence of a federal survivorship law, courts should look to state survivorship law.

The Alabama Supreme Court has held that, under ALA. CODE §6-5-462 (1975), "an unfiled tort claim does not survive the death of the person with the claim."  <u>McDuffie v. Hopper, et al.</u>, 982 F.Supp. 817 (M.D. Ala. 1997)(quoting <u>Malcolm v. King</u>, 686 So.2d 231 (Ala.  1996)).  However, the statute has been held not to abate actions for wrongful death.  <u>Mattison v. Kirk</u>, 497 So.2d 120 (Ala. 1986), overruled on other grounds, <u>King v. National Spa & Pool Inst., Inc.</u>, 607 So.2d 1241 (Ala. 1992).  The Plaintiff has not presented any facts that a claim under §14-6-105 was filed prior to the death of Anthony Ryan McLemore. Therefore, this Court holds that Plaintiff's claims under §14-6-105, which were not filed at the time of Anthony Ryan McLemore's death, abated upon his death. However, Plaintiff's sole claim arising out of McLemore's death in this action, the wrongful death claim under ALA. CODE §6-5-410 (1975), does survive.

Further, Plaintiff has no maintainable claim under §14-6-105 because there is no authority providing for a private right of action for any alleged violation of

that code provision. Absent any such authority, no such cause of action exists. See Roberts v. City of Geneva, 114 F.Supp. 2d 1199, 1215 (M.D. Ala. 2000)(quoting Leonard v. Enterprise Rent A Car Co., 38 F.Supp. 2d 982, 984 (M.D. Ala. 1999) ("A federal court may not read a private cause of action into a state statute absent 'clear and specific evidence' that the legislature intended to authorize such cause of action.")) There is no language contained in §14-6-105 which indicates that a private right of action for money damages for violation of that code provision is authorized or available.  In addition, Plaintiff does not cite any authority creating a private cause of action for violations of ALA. CODE  §14-6-105 (1975).  Accordingly, Defendant Harper's motion to dismiss as to Plaintiff's alleged claims under  §14-6-105 is due to be **GRANTED**.

### E.  Wrongful Death Claim

The Plaintiff asserts a wrongful death claim under ALA. CODE §6-5-410 (1975).  As noted above, the Alabama Supreme Court has held that, under ALA. CODE §6-5-462 (1975), "an unfiled tort claim does not survive the death of the person with the claim."  McDuffie v. Hopper, et al., 982 F.Supp. 817 (M.D. Ala. 1997)(quoting Malcolm v. King, 686 So.2d 231 (Ala.  1996)).  However, the statute has been held not to abate actions for wrongful death.  Mattison v. Kirk, 497 So.2d 120 (Ala. 1986), overruled on other grounds, King v. National Spa &

19

Pool Inst., Inc., 607 So.2d 1241 (Ala. 1992).  Therefore, Plaintiff's sole tort claim arising out of McLemore's death in this action is a wrongful death claim under ALA. CODE §6-5-410 (1975).  Although Plaintiff's wrongful death claim under ALA. CODE §6-5-410 (1975) does survive McLemore's death, Defendant Harper is entitled to immunity under both statutory discretionary function immunity (ALA. CODE § 6-5-338(a) (1975)) and common law discretionary function immunity (§875D of the Restatement 2d of Torts) as discussed in Section C.

Accordingly, Defendant Harper's motion to dismiss as to Plaintiff's wrongful death claim under §6-5-410 is due to be **GRANTED**.

## F.  Plaintiff's Claims Under Principles of Agency Law

In the complaint, Plaintiff asserts that "John Brown was the agent of the Co-Defendants and/or they ratified his conduct." (Complaint, ¶ 49).  It is not clear from Plaintiff's complaint and brief whether Plaintiff is asserting that John Brown was an agent of Defendant Harper.  To the extent that Plaintiff asserts that Brown was the agent of Defendant Harper, the Court finds that Brown was not the agent of Defendant Harper under principles of agency law.

Under Alabama law, "the test for agency is whether the alleged principal has retained a right of control over the actions of the alleged agent.  See Ex parte Wild West Social Club, Inc., 806 So.2d 1235, 1241 (Ala. 2001).  See also Gist v.

Vulcan Oil Co., 640 So. 2d 940, 942 (Ala. 1994); Butler v, Aetna Fin. Co., 587 So. 2d 308, 310 (Ala. 1991) ("It is axiomatic that for an agency relationship to exist, there must be a right of control by the principal over the agent.")  Plaintiff's allegations do not assert and contradict that the Defendant had a right to control the actions of John Brown, a drug dealer.  In fact, the Plaintiff alleges in the complaint that Officers Harrison and Harris, officers supervised by  Defendant Harper, utilized the decedent in order to "set up" Brown.  (Complaint, ¶ 17, 23.)  Plaintiff has not pled a set of facts to maintain a claim as a matter of law that Defendant Harper exercised or controlled the behavior of Brown, the alleged agent.

Further, the allegation that the Defendant ratified Brown's conduct is also not maintainable.  The doctrine of ratification imposes liability on a principal for an act committed by the principal's agent even when the act was beyond the scope of the agent's authority, if the principal takes certain steps to ratify the act.  See CIT Financial Services, Inc. v. Bowler, 537 So.2d 4, 5 (Ala. 1988) ("A ratification occurs when a principal retains the benefits resulting from his agent's unauthorized acts with knowledge of the material facts surrounding the transaction."  See also Tuskegee Institute v. May Refrigeration Co., 344 So.2d 156, 158 (Ala. 1997); Gray v. Great American Reserve Ins. Co., 495 So.2d 602, 607 (Ala. 1986).  The definition of ratification presupposes that an agency

21

relationship exists between the actor and the one whom the plaintiff seeks to hold liable for the act. Since under no set of facts consistent with those Plaintiff has pled can Plaintiff support a claim that Brown was an agent of the Defendant, the issue of ratification is legally irrelevant. Assuming that ratification is relevant, under no set of facts could Plaintiff establish that the Defendant accepted or retained benefits resulting from the murder of the decedent.

Accordingly, Plaintiff's claims under principles of agency law as to Defendant Harper are due to be **DISMISSED**.

### V. Conclusion

For the reasons set forth above, the Court grants the Defendant's motion to dismiss (Doc. 13). This opinion shall be carried out by a separate Order.

**DONE** and **ORDERED** this 19th day of May, 2005.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

22